# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 23, 2010

## STATE OF TENNESSEE v. ALPHANZA DALE PITTS, ALIAS ALFONZO DELL PITTS, ALIAS ALPHONSA DALE PITTS, ALIAS ALFONZO WOODS

### Appeal from the Criminal Court for Hamilton County
### No. 266697     Barry A. Steelman, Judge

### No. E2009-00974-CCA-R3-CD - Filed September 17, 2010

The Defendant, Alphanza Dale Pitts, was convicted by a Hamilton County Criminal Court jury of aggravated burglary, a Class C felony, and theft of property over $1000, a Class D felony. See T.C.A. §§ 39-14-403; -103 (2006). The trial court sentenced the Defendant as a persistent offender to fifteen years for the aggravated burglary conviction and as a career offender to twelve years for the theft conviction, to be served concurrently. On appeal, the Defendant contends (1) that the evidence was insufficient to support his convictions, (2) that the prosecutor made improper comments during opening and closing arguments, and (3) that the trial court erred in sentencing him to the maximum term of fifteen years for aggravated burglary. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Donna R. Miller (on appeal) and Brian L. O'Shaughnessy (at trial), Chattanooga, Tennessee, for the appellant, Alphanza Dale Pitts, alias Alfonzo Dell Pitts, alias Alphonsa Dale Pitts, alias Alfonzo Woods.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William H. Cox, III, District Attorney General; and C. Matthew Rogers, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## BACKGROUND

The Defendant and two co-defendants, Jeremy Bloodsaw and William Hammond, were indicted for aggravated burglary and theft of property valued at $1000 or more for their participation in the burglary of Paul Hart's unoccupied residence in Chattanooga. At the Defendant's trial, Eugene Penn testified that he lived on Union Avenue in the Highland Park neighborhood. He said that on the evening of October 4, 2007, he was sitting on his front porch and had "nodded off" when he heard a loud noise which he described as "clink, clink, like a pair of dollies." He immediately put on his eyeglasses and saw the Defendant in front of the home of his neighbor, Paul Hart. Penn said that his house faced the side of Hart's house on the corner of Greenwood Avenue and Union Avenue. He saw the Defendant pushing a dolly with a television down Greenwood Avenue toward Bailey Avenue. Penn observed the Defendant cross Bailey Avenue and then ran over to Hart's porch to look for the "for sale" sign in order to obtain Hart's telephone number. He took the sign, returned to his front porch, and called Hart to inform him that someone had been inside his house.

Mr. Penn testified that while he was talking to Hart, he saw a car come down Union Avenue and park behind Hart's house. He said the Defendant and two other men got out of the car and went inside Hart's house "like they owned that house, they cut the lights on . . . and started helping themselves." He said he could see all three men through the windows. He said that the police arrived as the Defendant came out the front door and that the Defendant told the officer that he lived nearby and heard a noise. Penn said that when he, and the police went to Hart's house, he noticed that a window in the front door had been knocked out.

Mr. Penn testified that he saw the Defendant in the neighborhood previously and spoke to him. He said that the Defendant's brother lived in the neighborhood and that the Defendant sometimes stayed with his brother. On cross-examination, Penn acknowledged that when he saw the Defendant pushing the dolly down the street he saw the Defendant from the back but did not see his face.

Felicia Dillard, Eugene Penn's daughter, testified that she was at her parents' house when her father came inside and told her mother to call the police because someone was breaking into Hart's house. Dillard said that she and her parents went to their door and saw three men walking up the hill in front of her parents' house and going into the victim's house. The lights in the victim's house came on, and because there were no curtains on the windows, she could see the three men walking through the house. She saw the men place

"stuff" in the trunk and in the front of the car that was parked in the driveway behind the victim's house. She said that when the police arrived, the Defendant came out the front door and tried to explain why he was in the house, saying that he heard a commotion and was "just trying to see what was going on." She said that the other two men ran, with one going into the bushes and the other hiding under the car. She said that the Defendant "kept walking up on" the police officer, causing the officer to draw his gun. She said that by this time, the Defendant stood directly under the street light on the corner. She acknowledged that the Defendant did not carry anything when he came out of the house. She identified the Defendant in the courtroom as one of the men she saw in the victim's house that night.

Detective Jerry McElroy of the Chattanooga Police Department testified that he was called to the crime scene by Officers Pinkard and Zirk, who had detained three suspects. He said that a pane of plexiglass was knocked out near the door handle of the house and that the porch light and several street lights around the house were on. He saw a Crown Victoria parked behind the house. Inside the house, papers were strewn about in the living room. The victim told him that a thirty-nine-inch Magnavox television was missing from the entertainment center. Detective McElroy said that he obtained a description of the stolen property and that the value of the property exceeded $1000. He said that the police recovered some of the items, including the thirty-nine-inch Magnavox television, a nineteen-inch Emerson television, a computer printer, a vacuum cleaner, sheets, and one or two sets of kitchen knives. Items not recovered included two ceiling fans. He said that the police recovered the televisions and a dolly from an apartment on Duncan Avenue, which was "two short city blocks" from the victim's house. He said that the police found several of the stolen items, including a knife set, sheets, a vacuum cleaner, and a computer printer, inside the Crown Victoria. Detective McElroy said that several large windows were on the Union Avenue side of the victim's residence and that only the living room window was covered with a blind.

Detective McElroy said that the fingerprints lifted from the driver's side rear door of the Crown Victoria matched those of the co-defendant, Jeremy Bloodsaw, and that those prints were the only positive match from the sets he lifted at the scene. He said that the co-defendant, William Hammond, owned the Crown Victoria. He said that when he went to the apartment on Duncan Avenue where he recovered the televisions, "Dewayne," who was "supposed to be Mr. Jeremy Bloodsaw's brother," came to the door and told him that the Defendant brought the televisions to the apartment.

Officer Ronald Zirk of the Chattanooga Police Department testified that he responded to a call about "several people breaking into a house" around 9:00 p.m. on October 4, 2007, at the intersection of Union and Greenwood. When he arrived on the scene, he spotted the Defendant, who "froze . . . for just a second," coming out of the victim's house. Officer Zirk

said that the Defendant started walking toward him and that he detained the Defendant. He acknowledged that the Defendant was not carrying any stolen items and did not have a weapon. He said that he also saw Hammond run behind the victim's house.

The victim, Paul Hart, testified that at the time of the burglary, his house located at 607 South Greenwood Avenue was for sale and had been vacant for two or three months. He said that when he arrived that night, the police were already there and that he noticed one of the plexiglass pieces in his front door was broken. He said that two ceiling fans, vacuum cleaners, two televisions, a printer, two sets of kitchen knives, comforters, sheets, and a dolly were missing and that the value of the missing property was over $1000. He described one of the televisions as a thirty-five-inch set that had been removed from the entertainment center. He said the police recovered the dolly and the thirty-five-inch television, which was damaged and "no longer workable." He said he moved back into the house about two weeks after the burglary and was currently living there.

The Defendant did not present any evidence. He was convicted upon the foregoing proof.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

The Defendant contends that the evidence was insufficient to support his convictions because he was never seen in the victim's house, did not possess any of the stolen property, and his fingerprints were not recovered from the scene. Additionally, he argues that the value of the stolen items was less than $1000 and that his theft conviction should be "reduced to theft over $500.00 at best." The State responds that the evidence was sufficient to support the Defendant's convictions. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence, but we must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

"Aggravated burglary is burglary of a habitation . . . ." T.C.A. § 39-14-403(a). As

relevant to this appeal, burglary is committed when a person enters a building without the owner's consent and with the intent to commit a theft. Id. § 39-14-402(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103.

The proof at trial established that the Defendant and his two co-defendants entered the victim's home by breaking a plexiglass piece from the front door and that they took several items of the victim's property without his consent. Eugene Penn testified that he saw the Defendant pushing a dolly containing a television set near the victim's house and then witnessed the Defendant and two other men return in a vehicle and go inside the victim's house "like they owned that house, they cut the lights on . . . and started helping themselves." Felicia Dillard testified that the Defendant was one of the men she saw inside the victim's house the night of the burglary. Officer Ronald Zirk testified that the Defendant came out of the victim's house when Zirk arrived. Items belonging to the victim were found in the car that the Defendant and his co-defendants drove to the victim's house. The victim testified that the value of the stolen property exceeded $1000. We conclude that the evidence was sufficient to sustain the Defendant's convictions.

## II. PROSECUTORIAL MISCONDUCT

The Defendant contends that the prosecutor made several improper comments during opening and closing arguments and claims that no curative instructions were given. The State responds that the Defendant waived consideration of this issue by failing to request a curative instruction or to raise a contemporaneous objection at trial. We note that in his motion for new trial, the Defendant raised an issue regarding improper comments during the opening statement but not during the closing arguments.

During opening argument, the State referred to Eugene Penn as "a hero in this case" and referred to the victim as feeling violated "because a man's home is his castle, and [the Defendant] violated that castle." The State also referred to Officer Zirk as being "put in a line of fire" when he arrived on the scene to find the Defendant still at the scene.

First, we will consider the Defendant's claims of an improper opening statement. Prosecutorial misconduct does not constitute reversible error unless the outcome was affected to the defendant's prejudice. State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001). In Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976), this court set out the following considerations for determining if the prosecutor's conduct could have improperly prejudiced the defendant and affected the verdict:

1.  The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2.  The curative measures undertaken by the court and the prosecution.

3.  The intent of the prosecutor in making the improper statement.

4.  The cumulative effect of the improper conduct and any other errors in the record.

5.  The relative strength or weakness of the case.

See State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (approving these factors in determining if the misconduct resulted in reversible error).

The Defendant claims that the State improperly said in the opening statement that Eugene Penn was a "hero"; that "a man's home is his castle, and [the Defendant] violated that castle"; and that Officer Zirk was "put in a line of fire" when he arrived at the scene and the Defendant was present. Before applying the test set out in Judge, we note that the Defendant does not explain why these statements were improper but rather rests upon his claim that "given the close nature of the proof," the State tried to "buttress poor proof by incensing the jury." We cannot conclude that any of these are incendiary statements. Applying the test provided in Judge, we conclude that the Defendant's claims of prosecutorial misconduct during the opening statement are without merit. Even assuming that the statements were improper, they were mild; the Defendant failed to object; and the case against the Defendant was strong.

The Defendant's complaints as to the closing argument are that the State told the jury, "[T]he dolly in question, the dolly that was being pushed down Greenwood Avenue on October the 4th, 2007, about 9 p.m., if you listen, you can hear it. I can still hear it today. Eugene Penn can still hear it today. . . ." The Defendant also complains about the State's reference to Eugene Penn, Felicia Dillard, Officer Zirk, and Detective McElroy as "superheroes." Because the claim as to the closing argument is raised for the first time on appeal, the issue is waived. See T.R.A.P. 3(e). The Defendant is not entitled to relief unless the issue rises to the level of plain error. See T.R.A.P. 36(a); Tenn. R. Crim. P. 52(b); State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). In this regard, we conclude that plain error does not exist. We disagree with the Defendant's claims that the statements were improper. Thus, consideration of this issue is not necessary to do substantial justice; and the Defendant is not entitled to plain error relief.

## III. SENTENCING

The Defendant contends that the trial court erred in sentencing him to the maximum term of fifteen years for aggravated burglary by failing to apply certain mitigating factors in determining the length of his sentence. The State responds that the trial court considered the mitigating factors and determined that none applied.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006 & Supp. 2008). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Carter, 254 S.W.3d 335, 344-45 (2008); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is on the appealing party to show that the sentence is improper.

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." Ashby, 823 S.W.2d at 169. In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information as to sentencing practices for similar offenses in Tennessee, (7) any statement that the Defendant made on his or her own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

In imposing a sentence within the appropriate range of punishment for a defendant:

[T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." Carter, 254 S.W.3d at 345.

As a persistent offender convicted of a Class C felony, the sentencing range for the Defendant was ten to fifteen years. T.C.A. § 40-35-112(c)(3). In sentencing the Defendant to the maximum term, the trial court determined:

The Court is to consider any mitigating or enhancement factors. Here the Court does find, with regard to the enhancement factors, . . . [T.C.A. §] 40-35-114,"that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range."

As was stated, the [D]efendant has 20 prior felony convictions. The Court relied on as many as seven of those for the career determination on the D felony, and five of those with regard to the conviction on the range 3 and the sentencing on range 3, so obviously there are felonies way beyond that.

And then [the probation officer's] presentence investigation also revealed an extensive history of misdemeanor convictions in General Sessions Court.

The Court . . . does also find that at the time that this felony was committed, that the [D]efendant was released on

-8-

probation. That is factor number 13. He was on . . . probation out of General Sessions Court for a drug paraphernalia case and a driving on suspended violation. Those both resulted in convictions on July the 6th of 2007.

This new offense of burglary and theft was committed on October 4th, 2007. Normally those would seem like trivial offenses to result in a finding of an enhancement factor, but the Court finds that those are not so trivial based on the fact that the [D]efendant has a complete and utter history of total, apparently total disregard for the law, because he has so many prior convictions, so the Court finds that those two enhancement factors apply.

With regard to mitigation, the presentence investigation officer did not find any.

There is an argument that the [D]efendant's criminal conduct neither caused nor threatened serious bodily injury. The Court finds that there is some . . . credible argument that that ought to apply, although the Court finds that in the context of aggravated burglary, there is always the potential for serious bodily injury to either be caused or threatened because of the nature of going in someone else's residence.

So the Court, even though the Court does hear the argument with regard to mitigating factor number 1, the Court doesn't give that factor any weight, and gives substantial weight to the fact that the [D]efendant has all of these prior criminal convictions, as well as the fact that he was on probation at the time that he committed yet another felony offense.

. . . .

So the Court finds with regard to [the Defendant] that . . . there is no room for a determination on the career felony theft as a D felony, that is simply a 12-year sentence.

However, on the aggravated burglary, the C felony as a range 3 [sic], it is 10 to 15 years of possible time. The Court

here is not going to have to consider any alternative sentencing because the sentence will be beyond ten years. Based on [the Defendant's] extensive record, the Court will sentence [the Defendant] to the maximum on the C felony at 15 years, Range 3, in the Tennessee Department of Correction[]; 12 years on the D felony, which is the only option available at 60 percent career.

The Defendant does not challenge the enhancement factors applied by the trial court, and the evidence supports them. However, we believe the trial court erred in its reason for not applying the mitigating factor regarding the Defendant's conduct not causing or threatening serious bodily injury. See T.C.A. § 40-35-113(1). The trial court found that the potential of serious bodily injury always exists in the crime of aggravated burglary. We disagree with the trial court that the potential for serious bodily injury is inherent in the crime of aggravated burglary. In the present case, the Defendant committed aggravated burglary of an unoccupied house. We note that in State v. James Michael Scott, No. M2001-02000-CCA-R3-CD, Sumner County (Tenn. Crim. App. Sept. 20, 2002), this court held that mitigating factor (1) applied to the defendant's aggravated burglary sentence where the proof showed that Defendant had already entered the home, and thus completed the offense of aggravated burglary, before the assault victim arrived. In comparison, in State v. Clarence Weaver, No. E1999-02005-CCA-R3-CD, Knox County (Tenn. Crim. App. Aug. 21, 2000), this court held that mitigating factor (1) did not apply to the defendant's aggravated burglary conviction even because the defendant and his sons entered a home at which no one was home but took guns into the house and could have been interrupted during their presence. We believe mitigating factor (1) was applicable in this case. We do not believe, though, that the sentence should change.

The record shows that the trial court considered the relevant facts, circumstances, and sentencing principles. The court gave great weight to the Defendant's very lengthy record of convictions and the fact that, at the time of the offenses which are the basis for this appeal, he was on probation from two misdemeanor convictions. The court found that the Defendant had "a complete and utter history of total, apparently total disregard for the law." We hold that the Defendant's continued, egregious criminal conduct and commission of these offenses while on probation so far outweighed any slight mitigation he was due for neither causing nor threatening serious bodily injury that the maximum sentence imposed by the trial court was not erroneous.

**CONCLUSION**

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE